IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRIAN PARBHUDIAL,<br><br>      Petitioner,<br><br>  vs.<br><br>JAMIE LAMANNA, Superintendent,<br>Green Haven Correctional Facility,<br><br>      Respondent. | No. 9:19-cv-00005-JKS<br><br>MEMORANDUM DECISION |

  Adrian Parbhudial, a New York state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Parbhudial is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Green Haven Correctional Facility. Respondent has answered the Petition, and Parbhudial has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

  In May 2010, Parbhudial was charged with attempted murder in the first degree, first-degree reckless endangerment, third-degree criminal possession of a weapon, first-degree hindering prosecution, third-degree perjury, and second-degree making an apparently sworn false statement. The charges stemmed from an incident where police executed a no-knock search warrant at Parbhudial's home in search of evidence of the Parbhudial family's involvement in the murder of Ganesh Ramgoolam, which had occurred outside the Parbudial residence on February 20, 2010. After officers used a battering ram to gain entrance to the residence, Parbhudial fired a round of birdshot from his shotgun at the officers, who were

wearing bullet-proof vests. After the shooting, the officers detained Parbhudial and brought him to the Schenectady Police Department for questioning. Following a gun residue test, Parbhudial acknowledged that he was the shooter, but claimed that he believed the officers to be intruders. Parbhudial was also questioned about the Ramgoolam shooting.

A supplemental indictment in June 2010 charged Parbhudial with attempted aggravated murder, attempted aggravated assault upon a police officer, first-degree attempted assault, and third-degree criminal possession of a weapon. The People moved to consolidate the two indictments, and Parbhudial consented to the consolidation and joined in the motion for joinder of charges pursuant to New York Criminal Procedure Law ("CPL") § 200.20(4).[1]

Roughly seven months after the charges were consolidated, and less than one week prior to the start of trial, Parbhudial made an oral application to sever the charges of hindering prosecution, perjury, and making an apparently sworn false statement from the rest of the charges. County court denied the motion, stating that the "cases were inextricably linked."

Following a three-week trial at which Parbhudial's defense was that he believed, at the time he shot the entering police, that he was protecting his family from vengeful members of the Ramgoolam family, the jury found Parbhudial guilty of attempted aggravated murder, third-degree criminal possession of a weapon, first-degree reckless endangerment, first-degree hindering prosecution, third-degree perjury, and second-degree making an apparently sworn

---

[1] That provision provides that the court may consolidate multiple indictments and treat them as a single indictment for trial purposes if they are joinable under CPL § 200.20(2)(b), which mandates that offenses are properly joined "when evidence of a crime charged in one indictment is material and admissible as evidence of a crime charged in a second."

false written statement. The trial court subsequently sentenced him to an aggregated term of forty years to life imprisonment.

Through counsel, Parbhudial appealed his conviction, arguing that: 1) the county court erred in denying his severance motion; 2) his convictions were not based on legally sufficient evidence; 3) his convictions were against the weight of the evidence; and 4) his sentence is harsh and excessive. The Appellate Division of the New York Supreme Court unanimously affirmed his conviction in a reasoned opinion issued on January 7, 2016. *People v. Parbhudial*, 22 N.Y.S.3d 648, 652 (N.Y. App. Div. 2016). Parbhudial sought leave to appeal in the New York Court of Appeals, which was summarily denied on March 31, 2016. *People v. Parbhudial*, 56 N.E.3d 908, 908 (N.Y. 2016).

Again proceeding through counsel, Parbhudial moved pursuant to CPL § 440.10 to vacate the judgment of conviction, arguing that newly-discovered evidence, consisting of affidavits from witnesses Angelene Parbhudial (Parbhudial's sister), Vishan Parbhudial (his brother), and Richard Baliraj (his sister's fiancé), supported his actual innocence. Parbhudial further averred that his trial counsel was ineffective for failing to: 1) seek adjournments until after the People had the opportunity to prosecute Angelene Parbhudial, Vishan Parbhudial, and Richard Baliraj for the Ramgoolam shooting so that Parbhudial could call them to testify at trial; 2) object to the court's instruction on the justification defense; 3) object to the joinder of charges; and 4) object to the prosecutor's opening statement, summation, and improper witness examinations. The county court held an evidentiary hearing at which his trial attorney, his brother, his sister, his sister's fiancé, and his ex-wife Nikita Parbhudial testified.

At the evidentiary hearing, Parbhudial's family members testified as to the events related to the execution of the search warrant. Parbhudial's brother, sister, and sister's fiancé testified that they had been charged with crimes related to the Ramgoolan shooting at the time of Parbhudial's trial, but they did not enter their guilty pleas to second-degree gang assault until after that trial ended.

Trial counsel testified that he did not consider moving to have Parbhudial's case tried after the trial of those family members and was not aware of any provision of the CPL that would have allowed such motion. He further testified that he decided not to call Parbhudial's family members at trial because he wanted to distance Parbhudial as much as possible from his family who had been implicated in the murder, and he did not want to call as witnesses those individuals that had been charged with the murder. Trial counsel testified that he did not recall why he made, or did not make, certain objections at trial and did not recall why he did not pursue certain lines of questioning.

At the conclusion of the hearing and in consideration of post-hearing memoranda of law by the parties, the county court denied the motion in its entirety. Parbhudial filed a counseled petition for leave to appeal to the Appellate Division, asking that court to review all claims unsuccessfully raised in the county court. The Appellate Division denied leave without comment on October 18, 2018.

Parbhudial then filed the instant counseled Petition for a Writ of Habeas Corpus to this Court on January 2, 2019. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A). Briefing is now complete, and the Petition is before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his counseled Petition before this Court, Parbhudial raises the ineffective assistance of trial counsel claims that he unsuccessfully raised to the state courts in his motion to vacate the judgment pursuant to CPL § 440.10. Namely, Parbhudial argues that counsel was ineffective for failing to: 1) call his ex-wife, Nikita Parbhudial, and mother, Omawattie Parbhudial, to testify at trial; 2) seek adjournment of his trial until his family members had been prosecuted and were able to testify at trial; 3) object to the jury instructions on justification; 4) object to the joinder of charges; and 5) object to the prosecutor's opening and closing statements and improper examination.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating

whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see*

*also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A. *Timeliness*

Respondent urges the Court to dismiss Parbhudial's Petition as untimely.

The AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Here, the New York Court of Appeals denied Parbhudial's application for leave to appeal his conviction on March 31, 2016. His conviction became final 90 days later, on June 29, 2016, the conclusion of the period during which Parbhudial could have sought certiorari review in the United States Supreme Court. *See Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001). It appears that he filed his CPL § 440.10 motion to vacate on April 20, 2017, after 294 days had lapsed on the one-year limitations period. The limitations period was tolled from April 20, 2017, until October 18, 2018, when the Appellate Division denied his application for leave to appeal. 28 U.S.C. § 2244(d)(1)(D)(2). Parbhudial therefore had 71 days to file his petition. The counseled Petition was filed on January 2, 2019, 76 days later. Respondent thus urges the Court to dismiss the Petition as untimely.

In response, Parbudial contends that equitable tolling should apply to render his Petition timely. Parbhudial stresses that his Petition was filed only 5 days late. Parbhudial also argues that he has been pursuing his rights diligently and that any delay is modest and attributable to difficulties and delays in retaining new counsel and in receiving notification of his denied CPL § 440.10 motion from former counsel, whose letter also incorrectly noted the date that a federal habeas petition would be due.

Here, however, this case may be more easily resolved on the merits, and thus the Court declines to decide the case on procedural grounds. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (stating that bypassing procedural questions to reach the merits of a habeas petition is justified "if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law"); *Boddie v. New York State Div. of Parole*, 288 F. Supp. 2d 431, 439 (S.D.N.Y. 2003) ("[P]otentially complex and difficult

issues about the various obstacles to reaching the merits [of a habeas petition] should not be allowed to obscure the fact that the underlying claims are totally without merit.") (quotation omitted). Accordingly, the Court will address the merits of Parbhudial's claims, as discussed below.

B.   *Merits*

Parbhudial's Petition alleges that trial counsel rendered ineffective assistance in a variety of ways. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Parbhudial must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New

10

York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Parbhudial's ineffective assistance claims must fail, however, even under the more favorable New York standard. With respect to his claim that counsel was ineffective for failing to call Nikita and Omawattie Parbhudial to testify, the decision of which witnesses, if any, to call at trial is the type of sound trial strategy that cannot be the basis for an ineffective assistance of counsel claim. *See Untied States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."); *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997) (defense counsel's decision whether "to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation").

Parbhudial counters that counsel's failure to call Parbhudial's ex-wife and mother at trial cannot be deemed a strategic decision because they were not implicated in the Ramgoolam murder. However, he fails to show that he was prejudiced by the omission, or that a different result would have been achieved had they been called, because neither witness testified that they saw Parbhudial at the exact time the shooting happened. Notably, the record shows that post-conviction counsel abandoned the claim as to Parbhudial's mother, and thus that claim is not properly before the Court.[2]

---

[2] The record indicates that, during the evidentiary hearing on Parbhudial's § 440.10 motion, post-conviction counsel explicitly withdrew the testimony of Parbhudial's mother from the hearing transcript and stated that they were no longer presenting that claim. *See* Docket No. 6-1 at 392-393 ("We will continue to go forward on the other grounds of that claim including the failure to call Nikita Parbhudial, as well as other grounds set forth in that motion, but we will not

Moreover, there were problems with the ex-wife's potential testimony. She stated by affidavit that she was with Parbhudial watching TV in his second-floor bedroom when she heard a loud bang and lot of screaming, which made it difficult to hear what anyone was saying, and she did not hear the word "police." Parbhudial stated, "I think it might be the people breaking in," before taking his shotgun and telling her to lock the door behind him. The ex-wife stated that, while she heard it, she "didn't see the gunshot go off." Docket No. 6-1 at 137. Although Parbhudial did not testify himself at trial, his version of events that corroborated with the ex-wife's affidavit was introduced at trial through statements he had given to law enforcement after his arrest as well as his videotaped interview that was played for the jury. While it might have been marginally helpful to Parbhudial if the ex-wife's statement was heard, ultimately, it is not reasonably likely that the jury would have credited Parbhudial's version of events in light of it.

In any event, at the evidentiary hearing, the ex-wife testified that she was watching TV alone in the second-floor bedroom when she heard the bang that she would later find out was the police entering the Parbhudial residence. She testified that Baliraj was the one that stated that "people might be coming in" and that then "Adrian came and took his gun and told me to lock the door behind him." Docket No. 6-1 at 355. While she had at some point seen Parbhudial playing video games in the second floor living room, she was not with him when the police entered. Her testimony at the §440 hearing thus contradicted Parbhudial's statement on that point and left open the possibility that Parbhudial was not on the second floor as he claimed but rather was the person officers testified they saw on the third floor attic, watching them as they prepared to enter. Because the ex-wife's testimony could actually have been quite damaging to

---

be pressing that claim based on Omawattie Parbhudial.").

Parbhudial's defense, Parbhudial fails to show that he was prejudiced by the omission of her testimony and thus fails to demonstrate that the state courts' rejection of his claim was anything but reasonable.

Nor can he show that counsel was ineffective for failing to request a continuance until after Parbhudial's family members were prosecuted and available to testify at trial. Importantly, trial counsel articulated a rational tactical decision for avoiding testimony from family members who had been implicated in the Ramgoolam murder. Moreover, as the county court recognized, even if Parbhudial's trial had taken place after the family members had pled guilty, those members would still have been able to invoke their Fifth Amendment rights against self-incrimination during the pendency of any appeal. *See People v. Cantave*, 993 N.E.2d 1257, 1260 (N.Y. 2013). The state courts' rejection of this claim was thus both reasonable and fully supported by the record.

The county court also reasonably rejected Parbhudial's claim that trial counsel was ineffective for failing to object to the trial court's omission of a justification charge. As the county court explained:

> Since there was no reasonable view of the evidence that the officers were burglarizing [Parbhudial's[ home or that they were trying to kill [Parbhudial] or members of his family, the trial court was correct in not reading the justification charge for counts 1 and 3 of the indictment. Therefore, [Parbhudial] wasn't entitled to a justification charge with regard to counts 1 and 3, and defense counsel was not ineffective for failing to object to the trial court's failure.

As to Parbhudial's claim that counsel was ineffective for failing to object to the joinder of the indictments, he fails to show that such objection would have been successful. As the Appellate Division explained in rejecting on direct appeal Parbhudial's contention that the claims were erroneously enjoined:

13

> Proof of the Ramgoolam murder by [Parbhudial's] family members was a necessary element of the hindering prosecution in the first degree charge, as well as the alleged perjury and sworn false statement charges. [Parbhudial's] knowledge of such crime and its connection to individuals living in his home were also relevant to and admissible in the People's case on the attempted aggravated murder charge to prove intent, motive and the lack of mistake; in fact, the central defense was that defendant did not know it was police entering his house and he mistakenly shot them believing they were intruders. Under the circumstances, the offenses were properly joined under CPL 200.20(2)(b) and, accordingly, County Court did not err in denying severance.

*Parbhudial*, 22 N.Y.S.3d at 651 (citations omitted).

Finally, Parbhudial fails to show that counsel was ineffective for failing to object to the prosecutor's opening and closing statements and certain lines of questioning. An independent review of the record supports the county court's conclusion that "there is no reason to believe that the objections cited by [Parbhudial] would have been sustained by the court or that cross examination would have elicited the answers that [Parbhudial] suggests." In sum, for the foregoing reasons, Parbhudial is not entitled to relief on any argument advanced in support of his ineffective assistance claim.

## V. CONCLUSION

Parbhudial is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 27, 2020.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
